**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 98-20628
Summary Calendar
_____


STEPHEN FROLICH,

Plaintiff-Appellant,

VERSUS

ORANGE COUNTY SUPPORT COLLECTION UNIT
and
KATHLEEN COMFORT,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Texas
(H-98-CV-1285)
_____

March 11, 1999

Before JOLLY, SMITH, and WIENER, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]


Stephen Frolich sought a declaratory judgment that the garnishment order obtained by Kathleen Comfort against his wages is null by virtue of having been obtained from a court lacking *in personam* jurisdiction over him. As did the district court, we find Frolich's claim foreclosed by *res judicata*, so we affirm.

----

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

I.

A.

Frolich was born in New York but moved to Kansas at the age of six months.  He returned to New York to attend college and married Comfort in 1974.  Although Frolich and Comfort spent their wedding night in New York, they never resided there while married. Furthermore, their two children were not born in New York.

Regrettably, the marriage did not last, and the two entered into a signed agreement regarding custody, support, and property in 1979.  Frolich executed the agreement in Georgia and Comfort in New York.  The agreement was incorporated into a judgment of divorce issued by a New York court in 1979.  This divorce was granted by default; Frolich did not appear and agreed not to contest the divorce so long as the separation agreement was incorporated into the divorce decree.

Since the divorce, Frolich has lived in Georgia and Texas, while his ex-wife Comfort and his children have lived in New York. Except for his child support payments, Frolich has not had any arguable contacts with New York since the divorce.

In 1985, a Texas Attorney General's action was instituted (by Comfort and a New York family court) against Frolich to enforce child support payments and arrearage.  Frolich complied with the Attorney General's order.

B.

In 1996, Comfort initiated a proceeding in New York to

increase Frolich's child support obligations to his now-emancipated children. Frolich responded by contesting New York's right to assert *in personam* jurisdiction.

A New York family court judge agreed with Frolich, noting that the requirements of New York's long arm statute had not been met, but was reversed by an appellate court that held that jurisdiction under New York's Family Court Act § 154(b)(4), under which Comfort had sued, is not limited by the New York long arm statute. Under the Family Court Act, a family court may exercise personal jurisdiction over a non-custodial, non-resident parent solely on the basis that he has furnished support for children residing in New York.

On remand, the family court judge exercised jurisdiction over Frolich and made new findings, enabling the Orange County Support Collection Unit ("OCSU") to issue a garnishment order. Frolich filed the instant petition for declaratory judgment, asserting that New York violated his due process rights by issuing a garnishment order against him in the absence of *in personam* jurisdiction pursuant to an unconstitutional statute (Family Court Act § 154(b)(4)). The federal district court dismissed his petition, holding that *res judicata* barred him from proceeding with his claim, and, in any event, that New York had properly exercised personal jurisdiction.

## II.

On appeal, Frolich reiterates his arguments that the Family

Court Act § 154(b)(4) is unconstitutional and that New York lacked jurisdiction over him. We review both of these legal issues *de novo*. *See Byram v. United States*, 705 F.2d 1418, 1421 (5th Cir. 1983). Finding each of these arguments precluded by *res judicata*, we affirm.

## A.

As the district court correctly explained, *res judicata* prevents a plaintiff from relitigating an already-decided claim. *See Kaspar Wire Works, Inc. v. Leco Eng'g & Mach., Inc.*, 575 F.2d 530, 535 (5th Cir. 1978). For *res judicata* to apply, the following elements must be satisfied: (1) The parties to the previous suit and the instant suit must be identical; (2) the prior judgment must have been rendered by a court of competent jurisdiction; (3) the prior judgment must have been final and on the merits; and (4) the instant suit must involve the same cause of action. *Nilsen v. City of Moss Point,* 701 F.2d 556, 559 (5th Cir. 1983) (en banc).

That the parties are identical, and that the prior judgment regarding New York's jurisdiction was final and on the merits, are not in dispute. Rather, the parties disagree over whether the prior judgment was rendered by a court of competent jurisdiction and whether the instant suit involves the same cause of action.

## B.

Frolich entered a limited appearance in the New York court to contest its jurisdiction over him. In so doing, he voluntarily

acquiesced to that court's jurisdiction over him for the limited purpose of determining this question of jurisdiction. *See Deckert v. Wachovia Student Fin. Servs., Inc.*, 963 F.2d 816, 818-19 (5th Cir. 1992); *see also* 18 MOORE'S FEDERAL PRACTICE § 131.30[1][e] (Matthew Bender 3d ed. 1998). As a result, that court's holding on the issue of *in personam* jurisdiction is binding on Frolich. *See Deckert*, 963 F.2d at 819; 18 MOORE'S FEDERAL PRACTICE § 131.30[1][e] (Matthew Bender 3d ed. 1998).

## C.

Frolich's challenge to the constitutionality of New York's long arm statute is likewise barred by *res judicata*, for this claim constitutes a challenge to New York's jurisdiction over him. *Res judicata* bars the making of arguments forsaken as well as those previously made when their target is an identical cause of action. *Travelers Ins. Co. v. St. Jude Hosp.*, 37 F.3d 193, 195 (5th Cir. 1994). More specifically, "the critical issue is not . . . the theory asserted but whether [the] plaintiff bases the two actions on the same nucleus of operative facts." *Id.* (citations omitted). The challenge to the constitutionality of the long arm statute is simply another argument as to why New York lacks *in personam* jurisdictionSSa claim arising from the "same nucleus of operative facts" as the previously litigated 1996 claim and therefore precluded by *res judicata*.

Frolich attempts to evade *res judicata* by trying to squeeze his argument into one of the narrow exceptions to the doctrine:

5

that of a change in law affecting one's constitutional rights.  *See Jackson v. DeSoto Parish Sch. Bd.*, 585 F.2d 726, 729 (5th Cir. 1978).  Under this exception, courts have allowed a claimant to relitigate an otherwise precluded constitutional claim if a significant intervening change in the law has occurred.  *See id.; Parnell v. Rapides Parish Sch. Bd.*, 563 F.2d 180, 185 (5th Cir. 1977).  While there is some authority to the contrary, this court has limited this exception to issues concerning constitutional rights.  *See, e.g., Erspan v. Badgett*, 659 F.2d 26, 27-28 (5th Cir. Unit A Oct. 1981) (per curiam); *see also* 18 MOORE'S FEDERAL PRACTICE § 131.21[2] (Matthew Bender 3d ed. 1998).

Frolich's claim does not qualify for this exception, because it does not implicate an alteration in the law affecting his constitutional rights.  Although Frolich alleges the infringement of his due process right to be free from the jurisdictional reach of a state lacking "minimum contacts" with him, *see Kulko v. Superior Ct.*, 436 U.S. 84, 92 (1978), the change in law at issue here is not one of constitutional consequence.  The change in law upon which Frolich seeks an exception to *res judicata* concerns New York's *statutory* basis for exercising jurisdiction, not its *constitutional* basis.  The repeal of the statute does nothing to alter New York's right to exercise jurisdiction over Frolich as a constitutional matter and therefore does not amount to a change in law capable of supporting the *res judicata* exception that Frolich

6

seeks.[1]

AFFIRMED.

---

[1] Frolich insinuates that the statute was repealed because it was believed to be unconstitutional.  Finding no support for this inference, we do not address what effect such evidence would have on our analysis.